UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PROCTER AND GAMBLE PAPER PRODUCTS CO.,

    Plaintiff,

v.      Case No. 07-C-883

KIMBERLY-CLARK CORP., et al.,

    Defendants.

**ORDER**

Procter and Gamble (P&G) seeks relief from the protective order in this case so that it can offer documents obtained through discovery in this matter in support of its challenge to at least one television network's decision to run Kimberly-Clark's "brick baby" diaper commercials. The commercials are the subject of P&G's Lanham Act claims against K-C. I initially granted P&G's motion, but then stayed my order to allow the parties to attempt to resolve their dispute. P&G has now filed a motion seeking to lift the stay of my earlier order, claiming that the parties have been unable to reach agreement as to four documents that P&G wishes to disclose as part of its network challenge to K-C's ad. A hearing was held on the motion on April 14. For the reasons given below, the motion will be granted in part and denied in part.

The first question is whether the documents at issue, which are sealed, are even covered by the protective order. I conclude that two of the four are covered. The documents consist of a two-page portion of the transcript of a deposition of one of K-C's Rule 30(b)(6) witnesses, an internal letter, a brief development memo, and a corporate email. (3-17-08 Decl. of Timothy M. Hanson,

Exs. 1-4.) The protective order is quite broad. Entered pursuant to the stipulation of the parties, it authorizes either party to designate as "confidential" any document that the party "in good faith believes [ ] contains trade secrets or nonpublic technical, commercial, financial, personal, or business information, or other valuable information covered by a legitimate privacy or other interest." (Dkt. 21 ¶ 1.) Even under this broad definition, however, I am unable to discern in the two-page portion of the transcript, (Dkt. 39, Ex. 1), any information that would fall into this category. The excerpt indicates that K-C tested only one size diaper to confirm the claims made in the ad. Counsel for K-C suggested that the answers reflected in the deposition excepts were misleading and in order to place them in context, K-C would be required to disclose even more of the deposition. But this does not make the answers contained in the excerpt P&G wants to offer confidential. I therefore conclude P&G may disclose Exhibit 1.

The same is true of the portion of Exhibit 2 that P&G wishes to disclose. The only portion P&G seeks permission to disclose refers to K-C's plan to perform tests on other sizes to confirm the advertised design versus P&G's product, Pampers Cruisers. Again, K-C contends that the information is misleading and must be placed in context so as not to be unfair. But there is no reason to believe the network will not afford K-C an opportunity to do so. In any event, the fact that the document needs to be placed in context so as not to be misleading does not make it confidential. Neither Exhibit 1, nor the identified portion of Exhibit 2, disclose the type of proprietary information that would seem to merit the "confidential" designation. Accordingly, P&G may disclose the non-confidential portion of this document, as well.[1]

---

[1] The portion of the document below the section entitled "Product Confirmation Testing" is to be redacted. P&G indicated it had no interest in that portion and chose not to contest K-C's contention that the information below that point was properly designated "confidential."

2

Case 1:07-cv-00883-WCG   Filed 04/14/08   Page 2 of 5   Document 52

As to the remaining two documents, Exhibits 3 and 4, I conclude K-C's designation is appropriate. Both contain confidential information about K-C's advertising strategy. Each contains the kind of "business information" that renders it "confidential" under the protective order. While they may not directly concern trade secrets, they relate to the kind of nonpublic technical, commercial or business information that large corporations like K-C attempt to keep private. Given that the protective order governs these documents, the question is whether relief from the protective order is warranted.

In an earlier ruling addressing the protective order, I granted P&G relief from the nondisclosure provision with respect to documents that K-C had already disclosed to the networks to support its claim that the ads were appropriate. I also indicated, however, that even documents that were designated confidential could be used in P&G's network challenge since that was "outside the protective order's intent." (Dkt. 33 at 2.) That is, in my view the documents were being disclosed to a network – rather than a competitor – for a purpose at least arguably parallel to the purpose served by this lawsuit rather than for some sort of business-related purpose that could make unfair competitive use of the data in question. Having reviewed the submissions and arguments of the parties, however, I am now persuaded that confidential documents produced for, or disclosed in, a federal Lanham Act lawsuit should generally *not* be excused from the purview of a protective order merely because the plaintiff wishes to disclose them to a television network rather than a competitor.

Several considerations come into play, the first of which is pragmatic. K-C had no duty to disclose the documents in question outside the context of discovery within this lawsuit. When the documents – or one side's knowledge about them – owe their existence only to civil proceedings

3

instituted by the party who now seeks to make use of the documents, the court is, in some sense, being asked to play a collateral role to the ongoing proceedings with the television networks. The danger is that the Lanham Act could become a vehicle for obtaining otherwise unavailable discovery for network challenges. Given the gray areas often posed by Lanham Act litigation, it would typically be difficult to conclude that such lawsuits are baseless or frivolous, and thus Rule 11 sanctions are not a sufficient deterrent. The court is thus reluctant to allow the fruits of federal civil proceedings to be used in the fashion P&G proposes. While there is no suggestion P&G's motives are not pure here, granting the relief it seeks could open the door to such abuse.

A second reason to decline an exception to the protective order is that it seems largely unnecessary, given the context of the network proceedings described to the court. If P&G has a voice in such proceedings – and evidently it does – it can make significant arguments to the networks about K-C's product testing methods without referencing or producing the documents in question. If the networks decide they want more information to back up K-C's claims, then they can ask K-C to produce it voluntarily. I fully understand why P&G would want to produce the specific documents in question here, but ultimately it is presuming that this court's view of their relevance should be imputed to whomever in the network process is making the decisions in question. The networks are largely entitled to make their advertising decisions as they see fit, and if they are persuaded that K-C is not making full disclosures to them, they can ask for more information or pull the ads. The fact that a given document *might* be deemed useful by a television network is not, under these circumstances, sufficient reason to allow disclosure.

Ultimately, there is something unfair about using the expansive discovery process envisioned by the Federal Rules of Civil Procedure as a tool for obtaining (or even creating)

4

information, not otherwise available, when it may have an adverse impact on the discloser of that information in unrelated, non-judicial proceedings. This is especially so when the case is governed by a protective order. Here, the order specifically states that confidential documents are not to be used "for any purpose whatsoever other than preparing for and conducting the litigation in which the information or documents were disclosed." (Dkt. # 21 at ¶ 3.) If discovery is to proceed in litigation as openly and freely as the Rules expect, a court should be reluctant to impose the additional disincentive to full production and disclosure that P&G proposes. Additional disincentives lead to obstruction and discovery disputes: would P&G and KC have cooperated in expedited discovery so readily if KC knew P&G was going to use its discovery for some other purpose? In this case, it seems the networks are free to make their own inquiries and are fully able to render their ultimate decisions based on the information KC provides. If P&G can convince them that KC has withheld relevant information, that fact can factor in their decision as well. But P&G has not convinced me that the protective order should be set aside for any of the confidential documents presently at issue. Accordingly, the motion is **DENIED** as to those documents properly designated as confidential under the protective order. As to the two that I have found do not merit that designation, the motion is granted.

**SO ORDERED** this 14th day of April, 2008.

/s William C. Griesbach
United States District Judge

5